[Cite as *State v. Blue*, 2024-Ohio-826.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TRENTTON D. BLUE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 22 JE 0026

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 22-CR-4

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane M. Hanlin*, Prosecutor, and *Atty. Bernard C. Battistel,* Asst. Prosecutor for Plaintiff-Appellee and

*Atty. Eric M. Reszke*, for Defendant-Appellant.

Dated:  March 1, 2024

**Robb, P.J.**

{¶1} Defendant-Appellant Trentton D. Blue appeals after being convicted by a jury of two drug possession charges in the Jefferson County Common Pleas Court. He contends the state's evidence was not sufficient to prove he possessed the drugs and argues the verdict was against the manifest weight of the evidence. Appellant additionally claims he received ineffective assistance of counsel, opining defense counsel should have demanded testimony from the forensic scientist regarding a lab report. He also argues the felony sentence was an abuse of discretion. For the following reasons, the trial court's judgment is upheld, and Appellant's convictions are affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2} Based on drugs discovered during a December 21, 2021 traffic stop, Appellant was indicted on three counts of drug possession. (2/2/22 Ind.); (5/4/22 Amd.Ind.). Count one originally alleged possession of methylenedioxy-methamphetamine (MDMA, commonly known as Ecstasy), which was consistent with field-testing (and consistent with a statement in Appellant's recorded phone call from the jail). The language of this charge was amended after lab testing specified the pills were methamphetamine (meth); the same statutory subdivision applied. This count was a second-degree felony as the amount was 19.54 grams. *See* R.C. 2925.11(A), (C)(1)(c) (equals or exceeds five times the bulk amount but less than 50 times the bulk amount).

{¶3} Count two originally alleged possession of oxycodone hydrochloride, which was consistent with a stamp on each of the 72 pills recovered. *See* R.C. 2925.11(A), (C)(1)(b) (third-degree felony). The charge was amended after lab testing showed the pills contained fentanyl. Possession of a fentanyl-related compound in an amount exceeding five grams was also a third-degree felony. *See* R.C. 2925.11(A), (C)(11)(c). (As further stated below, Appellant was acquitted of this charge.)

{¶4} Count three alleged possession of cocaine, a fifth-degree felony for an amount lower than the bulk amount. *See* R.C. 2925.11(A), (C)(4)(a). At trial, the jury watched body cam videos and heard testimony by the following officers from the Steubenville Police Department: the sergeant who conducted the stop; the back-up officer who arrived shortly after the stop; an investigating officer; and two detectives

involved in transporting evidence between the police station and the lab at the Bureau of Criminal Investigation (BCI).

{¶5} The sergeant initiated the traffic stop at 12:30 a.m. upon noticing Appellant driving a vehicle with only one working headlight. (Tr. 64). As the sergeant stood at the driver's side window, he smelled a strong odor of marijuana. (Tr. 65). The sergeant checked the licenses of the driver and front seat passenger through the computer system in his patrol car. The back-up officer arrived on the scene, and the sergeant asked Appellant to exit the vehicle.

{¶6} Appellant acknowledged he had marijuana in the armrest. (Tr. 124); (St.Ex. 1). The two passengers were then asked to exit the vehicle and was frisked. The front seat passenger had marijuana on his person. The three occupants were instructed to stand in front of the patrol car while the sergeant searched the vehicle. He found the marijuana in the armrest. (Tr. 65, 72). He also found marijuana in a seat pocket at the back seat passenger's position. (Tr. 74-75, 97).

{¶7} When the sergeant found two plastic shopping bags on the driver's floorboard, Appellant declared, "nothing but [food?] in there man." (St.Ex. 1). The sergeant responded that he had to check anyway. One bag contained a potato chip canister. The other bag contained a glass jam jar holding clear plastic baggies. (Tr. 65-66, 72).

{¶8} A field test and later lab tests showed cocaine in two of the baggies (in the amounts of .16 grams and .20 grams). (Tr. 67-68, 78, 144, 163-164); (St.Ex. 8). Another baggie contained over 60 pills of various colors, which field-tested positive for Ecstasy (methylenedioxy-methamphetamine); later lab tests specified the pills contained methamphetamine. (St.Ex. 8); (Tr. 65-68, 78, 161, 142-143).

{¶9} Upon viewing the baggies, the sergeant told Appellant he was under arrest and simultaneously took hold of his arm. (Tr. 66, 116). Appellant resisted arrest by slipping out of his sweatshirt. He then ran across the street and through a parking lot while being chased by both the sergeant and the back-up officer. The back-up officer deployed his Taser to apprehend Appellant. (Tr. 117).

{¶10} At this point, the sergeant turned around, noticed the passengers he left by his vehicle were moving around the stopped vehicle, and yelled for them to stay away from the vehicle as he returned to the scene. (St.Ex. 1). The sergeant placed the jar on

the hood of the patrol vehicle and began removing the baggies from it. Upon seeing this, Appellant announced, "It's cocaine bro." (St.Ex. 1).

{¶11} A registration and insurance card belonging to Appellant's mother were found in the street. (Tr. 101, 133-134). An additional clear plastic baggie was also recovered from the street (a few feet from where Appellant's sweatshirt was dropped). (Tr. 117). This baggie contained 72 blue tablets marked with what appeared to be the manufacturer's stamp for 30 milligrams of oxycodone. The officers had no field test available for what they believed was oxycodone. The subsequent lab test showed the pills contained fentanyl. (Tr. 67, 143, 162); (St.Ex. 8).

{¶12} Within hours of his arrest, Appellant made a call from the jail phone to his mother (he called a number assigned to a person with the same last name as his and addressed the person who answered as "Ma"). (Tr. 150-160). The recorded call was played for the jury. Appellant said, "I don't know where the F-2 is coming from because they only caught me with the X pills and the twenty of work and the twenty of soft." He also mentioned, "I told them where the weed was." Stating he could not understand why he was charged with an F-2, Appellant said the only drugs that were his were those "in that damn little jar and what was in the center console." He told her the only items he dropped were her cards. He then reiterated, "I don't understand what the fuck the F-2 could be. Like I didn't get caught with nothing but those damn X pills."

{¶13} Those pills he called X (Ecstasy) were the basis for the second-degree felony charge. In addressing Appellant's phone admissions, an officer opined Appellant did not realize the weight of the meth pills pushed the offense to a second-degree felony. (Tr. 160). Defense counsel argued the back seat passenger could have placed the baggie with the meth pills into the jar on the driver's floorboard after Appellant was removed from the car and while the sergeant was patting down the front seat passenger. As to the baggie with the fentanyl pills found in the street, defense counsel pointed to the video (and corresponding still shots) in arguing this baggie did not appear to be in the path over which Appellant ran, suggesting it was thrown there by one of the passengers while the officers were busy chasing Appellant.

{¶14} The jury found Appellant not guilty of the fentanyl possession charge but guilty of the meth and cocaine possession charges. For second-degree felony meth possession, the court imposed a prison sentence of 5 to 7.5 years. For fifth-degree felony

possession of cocaine, the court imposed a concurrent sentence of 12 months. Appellant filed a timely appeal.

ASSIGNMENT OF ERROR ONE

{¶15} Appellant sets forth three assignments of error, the first of which raises argument on both sufficiency and weight of the evidence as follows:

"THE VERDICTS OF GUILTY TO THE OFFENSES OF POSSESSION OF METHAMPHETAMINE AND COCAINE WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶16} Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82; *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶17} In reviewing the sufficiency of the evidence, we view the evidence, including reasonable inferences, in the light most favorable to the prosecution to ascertain whether "any" rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (consider all evidence in the light most favorable to the prosecution, including reasonable inferences); *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). *See also State v. Filiaggi,* 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999) (viewing reasonable inferences in favor of the state).

{¶18} Appellant contends there was insufficient evidence showing he possessed the meth and cocaine. However, when the sergeant first approached the bags on the driver's floorboard (mid-way through his search of the vehicle), Appellant verbally attempted to discourage him from focusing on the area. It is also notable that he fled when the officer began to arrest him immediately after the search of the plastic grocery bags.

**{¶19}** After being returned to the scene from his episode of fleeing, Appellant saw the sergeant re-examining the baggies in the jar and spontaneously declared that the contents of a baggie being handled was cocaine. The jury heard this admission while watching the body cam recording, and defense counsel acknowledged Appellant's admission in closing argument. (Tr. 172). The jar was in a plastic grocery bag on the driver's floorboard. Appellant was driving the vehicle when it was stopped. (He also had control over the registration and insurance cards, said he knew the headlight was out, and instructed relatives regarding the vehicle's impoundment.)

**{¶20}** Moreover, Appellant told his mother in the recorded jail call, "they only caught me with the X pills and the twenty of work and the twenty of soft" which were "in that damn little jar * * *." In the phone call, Appellant distinguished these products from the "weed" (noting he disclosed the location of the weed to the officers). The reference to two "twenty" amounts is consistent with the two baggies of cocaine (weighing .16 and .20 grams), which were found in the jar.

**{¶21}** Regarding Appellant's admission to possessing "X pills," testimony indicated X is commonly used to refer to Ecstasy, and this is consistent with common sense techniques of abbreviated pronunciation. The variously-colored meth pills field-tested positive for Ecstasy (methylenedioxy-methamphetamine). Testimony indicated meth appears on a field test as Ecstasy, which has meth as a component (as can be seen in the scientific name). Appellant's admission to his mother that he possessed the "X pills" in the jar could be equated by a rational person to being an admission to possessing the meth pills in the jar. This is especially true considering this was the same jar containing the cocaine he had already identified to the officers at the scene. Additionally, circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). As some rational juror could find Appellant possessed the cocaine and meth, the state presented sufficient evidence to support his drug possession convictions.

**{¶22}** Weight of the evidence concerns the effect of the evidence in inducing belief, and our review evaluates "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. The appellate court considers whether the state met its burden of persuasion. *Id.* at 390 (Cook, J., concurring) (as opposed to the state's

burden of production involved in a sufficiency review). When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶23} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This is because the trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Where a case was tried by a jury, only a unanimous appellate court can reverse on manifest weight of the evidence grounds. Ohio Constitution, Article IV, Section 3(B)(3). The power of the court of appeals to sit as the "thirteenth juror" is limited in order to preserve the jury's primary function of weighing the evidence. *Thompkins*, 78 Ohio St.3d at 389.

{¶24} Appellant emphasizes the sergeant who initiated the stop did not notice there was a back seat passenger until after he removed Appellant from the vehicle and approached the other side of the vehicle to remove the front seat passenger. Appellant also claims the officers could not see what the back seat passenger was doing after Appellant's removal from the vehicle. His defense was that this passenger could have put the meth in the jar without Appellant's participation, such as when the sergeant was frisking Appellant or the front seat passenger. He notes the back seat passenger left other drugs (marijuana) in the vehicle.

{¶25} However, the officers recovered three small amounts of marijuana attributable to each occupant of the vehicle, with the back seat passenger sitting directly behind the seat pouch where the marijuana attributed to him was found. Further, the sergeant testified that during his removal and frisk of the front seat passenger, he divided his awareness between the frisk and the passenger remaining in the vehicle. (Tr. 93).

He opined it would have been impossible for the back seat passenger to put something in the jar while he was frisking the front seat passenger. (Tr. 94-95, 107).

**{¶26}** Notably, the back-up officer arrived before Appellant was removed from the vehicle, and he immediately noticed there was a back seat passenger. (Tr. 138). He approached from the side of the vehicle where the back seat passenger was sitting, providing a better view than the sergeant's initial view from the driver's side of the stopped vehicle. (Tr. 122). As the back-up officer noticed the back seat passenger had his hand up by his face, he maintained awareness of this passenger and his hand. (Tr. 134).

**{¶27}** We incorporate the above review of the evidence in our Statement of the Case and while discussing the sufficiency of the evidence. We emphasize the jury heard the officers testify, watched two body cam videos, and listened to the recorded jail call. As reviewed above, in the call to his mother, Appellant said he had "X pills" plus "twenty work and twenty soft" in the jar. As the state emphasizes, the jury worked through the evidence and its implications and acquitted him of the possession of fentanyl charge. The jury therefore weighed the defense theory about a passenger possessing the drugs and moving them into spaces attributed to Appellant, and they accepted the theory as to the fentanyl in the street but rejected the theory as to the meth and cocaine inside the jar.

**{¶28}** "When more than one competing interpretation of the evidence is available and the one chosen by the jury is not unbelievable, we do not choose which theory we believe is more credible and impose our view over that of the jury." *State v. Baker*, 7th Dist. Mahoning No. 19 MA 0080, 2020-Ohio-7023, ¶ 148. Concluding the meth and cocaine in the jar belonged to Appellant was clearly within the jury's province and was not contrary to the manifest weight of the evidence. The evidence does not weigh "heavily" against the convictions, and this is not an "exceptional" case where a jury "clearly lost its way" and created a "manifest miscarriage of justice" requiring a new trial. *Lang*, 129 Ohio St.3d 512 at ¶ 220, quoting *Thompkins*, 78 Ohio St.3d at 387. This assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

**{¶29}** Appellant's second assignment of error contends:

"THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."

**{¶30}** A claim of ineffective assistance of counsel requires a showing of both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If the performance was not deficient, then there is no need to review for prejudice and vice versa. *See State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶31}** In evaluating an alleged deficiency in performance, the court asks whether there was "a substantial violation of any of defense counsel's essential duties to his client." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Our review is highly deferential to counsel's decisions as there are "countless ways to provide effective assistance in any given case" and there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Id.* at 142-143, citing *Strickland*, 466 U.S. at 689. A reviewing court should not second-guess the strategic decisions of counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

**{¶32}** As to the prejudice prong, the court must find there is a reasonable probability the result of the proceedings would have been different but for counsel's serious error. *Id.* at 557-558. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair due to the performance of trial counsel. *Id.* at 558, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Lesser tests of prejudice have been rejected: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d at 142, fn. 1, quoting *Strickland*, 466 U.S. at 693.

**{¶33}** Appellant contends trial counsel was ineffective by failing to demand the testimony of the BCI forensic scientist who authored the lab report identifying the drugs. He argues counsel should have ensured this scientist was confronted about the practices and procedures of the lab in order to attack her credibility on the identity and weight of the substances tested. The state disclosed the lab report in discovery along with a notarized statement from the forensic scientist. The state also provided a notice advising the lab report was prima facie evidence of the contents, identity, and weight unless a demand for the testimony was made, quoting R.C. 2925.51. *See State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 22-43 (compliance with this statute satisfies the confrontation clause by providing the defense the *opportunity* for

cross-examination, which confrontation right is waived by counsel, on behalf the defendant, by the failure to file a demand for testimony in lieu of the lab report).

{¶34} The defense did not file a demand and did not object to the use of the lab report (St.Ex. 8) or the officers' testimony on its contents. In fact, defense counsel specifically stipulated to the contents of the lab report and to its admission on the record at trial. (Tr. 164). As the state points out, the entire defense was to show the drugs belonged to a passenger, *and it worked* as to the 72 pills containing fentanyl (for which Appellant was acquitted notwithstanding their position in the street by the belongings he dropped when he fled after resisting arrest).

{¶35} We incorporate our discussion of the evidence above and recap some of the facts related to drug identification here as well. Appellant admitted the white powder in the jar was cocaine at the scene. In addition to the weight from the lab report, the sergeant testified to weighing the baggies containing the white substance. Appellant was charged with less than the bulk amount of cocaine in any event. Before the lab tests, field testing showed the white substance was cocaine. Field testing also showed the pills in the jar were Ecstasy (methylenedioxy-methamphetamine) with testimony indicating the field test showed Ecstasy for meth, as meth was a component of Ecstasy (contained in the very title of Ecstasy's chemical name). Additionally, Appellant was recorded on a jail call to his mother acknowledging his possession of "X pills" and "twenty of work and twenty of soft" contained in "the damn little jar".

{¶36} The decision to proceed without demanding testimony from the forensic scientist was clearly a strategic decision. "The decision whether to cross-examine a particular witness is a tactical decision ultimately controlled by a defendant's trial counsel. * * * When a defendant who is represented by counsel does not demand the testimony of the analyst pursuant to R.C. 2925.51, it can be presumed that the attorney is acting in the best interests of the client * * *." *Pasqualone*, 121 Ohio St.3d 186 at ¶ 31-32. In summary, there was no indication on the record that defense counsel rendered deficient performance by failing to insist on testimony from the forensic scientist. In any event, there is no indication on the record that the results of the proceeding would have been different if counsel had filed a demand and cross-examined the forensic scientist. This assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

{¶37} Appellant's third and final assignment of error argues:

"THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING THE APPELLANT TO FIVE YEARS IN PRISON."

{¶38} For the second-degree felony possession of meth conviction, the court was choosing between a minimum sentence of 2, 3, 4, 5, 6, 7, or 8 years. *See* R.C. 2929.14(A)(2)(a). *See also* R.C. 2925.11(C)(1)(c) (imposed as a "mandatory prison term"). The defense requested a minimum sentence of 3 years in prison (which would have corresponded to a maximum sentence of 4.5 years under the Reagan Tokes Law). (Tr. 225). The court sentenced Appellant to a minimum sentence of 5 years (with a corresponding maximum sentence of 7.5 years). For the fifth-degree felony possession of cocaine conviction, the available prison sentences were 6, 7, 8, 9, 10, 11, or 12 months. R.C. 2929.14(A)(5). The court imposed a prison sentence of 12 months, but the sentence was run concurrent to the sentence on the second-degree felony.

{¶39} Quoting the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, Appellant argues the sentence chosen by the trial court was an abuse of discretion under the circumstances of his case. In felony sentencing, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). The court can vacate or modify a felony sentence if it clearly and convincingly finds (a) the record does not support the court's findings under certain specifically cited statutory divisions or (b) the sentence is otherwise contrary to law. *Id.*

{¶40} As R.C. 2929.11 and 2929.12 are not among the statutes cited in subdivision (a) of R.C. 2953.08(G)(2), the court cannot use (G)(2)(a) to review whether the record supports the principles and factors in R.C. 2929.11 or 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 27-28. The *Jones* Court rejected dicta to the contrary contained in its *Marcum* case. *See id.*, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 (where the Court held the plain language of R.C. 2953.08(G)(2) prohibits appellate courts from applying an abuse of discretion standard of review to sentencing term challenges but then suggesting in dicta that it would be consistent with R.C. 2953.08(G) for an appellate court to modify a sentence if the record does not support the sentence under R.C. 2929.11 or 2929.12).

Case No. 22 JE 0026

**{¶41}** Moreover, the "otherwise contrary to law" language in subdivision (b) of R.C. 2953.08(G)(2) does not allow the appellate court to reverse by finding "the record does not support the sentence." *Id.* at ¶ 38. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42.

**{¶42}** Even if we were to review under our former use of the *Marcum* dicta to consider the consistency of the sentence with R.C. 2929.11 and 2929.12, we would not be able to find "by clear and convincing evidence that the record does not support the sentence." *See Marcum*, 146 Ohio St.3d 516 at ¶ 23. Furthermore, even if we were to conduct our former abuse of discretion alternative review, we would not find the sentence unreasonable, arbitrary, or unconscionable. *See State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 19 (where a plurality used a two-step felony sentencing review with abuse of discretion as the second stage), *abrogated in Marcum*, 146 Ohio St.3d 516.

**{¶43}** Appellant states the circumstances of this case called for a lesser sentence than the one imposed by the court. For instance, he says his age of 29 years suggests he was still amenable to rehabilitation. He emphasizes his post-release control for a prior offense was not revoked during the pendency of this case and it expired before sentencing. (His post-release control expired soon after he committed the current offenses, and sentencing in this case occurred eight months later.) At sentencing, defense counsel argued Appellant's prior convictions were from 2012, he served his time, and he was successfully completing his post-release control until he was caught with the drugs resulting in the offenses at issue herein. Appellant apologized and asked for leniency at sentencing, stating he had two children waiting in the hallway plus a two-year-old child and a new baby (born premature three weeks prior to sentencing).

**{¶44}** The court noted many defendants have children and Appellant should have been thinking of them instead of driving around late at night with drugs (knowing he had only one headlight). *See* R.C. 2929.12(D)(5) (the trial court weighs the genuineness of remorse as affecting the likelihood of recidivism). The trial court also observed that the state gave him "a break" by not prosecuting a charge related to his fleeing from the scene when the sergeant tried to place him under arrest. (Tr. 229). As the trial court recited,

Appellant's 2012 convictions were for aggravated robbery and felonious assault. *See* R.C. 2929.12(D)(2) (recidivism is more likely when the offender has prior convictions). He served five years in prison for those crimes. The fact that his post-release control was not revoked after he was arrested in the case at bar does not diminish the fact that he was on post-release control when he committed new offenses. *See* R.C. 2929.12(D)(1) (recidivism is more likely when committing the offense while under post-release control). Finally, we note the court said it considered the purposes and principles of sentencing and the seriousness and recidivism factors. (11/8/22 J.E.). *See also Jones*, 163 Ohio St.3d 242 at ¶ 20 ("neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record").

**{¶45}** We cannot find by clear and convincing evidence that the sentence is contrary to law or the record does not support the sentence under the applicable statutes. (Even if were we to conduct the former abuse of discretion review, there is no indication the court acted unreasonably, arbitrarily, or unconscionably in choosing a mid-range 5-year minimum sentence on the second-degree felony with a corresponding maximum sentence of 7.5 years and a concurrent 12-month sentence on the fifth-degree felony). This assignment of error is overruled.

**{¶46}** For the foregoing reasons, the trial court's judgment is upheld, and Appellant's convictions are affirmed.

Waite, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**